# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ANGELL INVESTMENTS L.L.C., an Illinois limited
liability company; JAMES BEEDIE; MICHAEL
CARUSILLO; WILLIAM A. CASTELLANO; CB &
JM CONSTRUCTION, PTY., LTD.; CCF
PARTNERS II, LLC, a California limited liability
company; COMMODORE CAPITAL
MANAGEMENT, L.L.C., an Illinois limited liability
company; MICHAEL CORBAT; SALVATORE A.
CRAPAROTTA; MICHAEL DOBBINS; DEBORAH
DOBBINS; WILLIAM J. FINN, JR. as TRUSTEE
under the WILLIAM J. FINN, JR. DECLARATION
OF TRUST DATED MAY 22, 1991; GENTEK, INC.,
a Delaware corporation; ALBERT GIUSFREDI;
ILENE GIUSFREDI; HARBOUR INVESTMENTS,
LP, a Delaware limited partnership; ROBERT H.
HUFFMAN III;   JOHN E. JONES; ALISON C.
KNOTT; CARROLL  D. KNOTT; CAROLL E.
KNOTT; JAMES F. KNOTT; JAMES F. KNOTT,
JR.;  BRUCE L. KOEPFGEN;  WILLIAM  R.
LANGLEY; LATONA ASSOCIATES FUND I, LLC,
a Delaware limited liability company; MARSHALL
LEES; DAVID LUCAS; JAMES H. MARSHALL;
HELEN  R.  McDERMOTT;  MICHAEL  L.
McDERMOTT; RICHARD ALAN McGRATH, as
TRUSTEE of the RICHARD ALAN McGRATH
TRUST; ROBERT L.PEARSON, as TRUSTEE of the
JONAS PEARSON TRUST; GENE G. PETRIE,
TRUSTEE of the GENE G. PETRIE TRUST; JOHN J.
PLY, as TRUSTEE of the JOHN J. PLY 1987 TRUST,
AS RESTATED; JOHN ROTHSCHILD; CHARLES
ROVEN, as TRUSTEE of the STEEL ROVEN
REVOCABLE TRUST; CHARLES ROVEN, as
TRUSTEE of the STEEL ROVEN EXEMPTION
TRUST; CHARLES RUBIN, as TRUSTEE of the
AMC INVESTMENT TRUST; LEO SCHLINKERT;
HELENE SPIEGEL, as TRUSTEE of the SPIEGEL
1999 IRREVOCABLE TRUST  FBO ANTHONY
SPIEGEL; HELENE SPIEGEL, as TRUSTEE of the

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)



DOCKETED
AUG 20 2001

**JUDGE LINDBERG**

MAGISTRATE JUDGE BOBRICK

# 01C  6359

**Case No.**

**Plaintiff Demands
Trial By Jury**

SPIEGEL 1999 IRREVOCABLE TRUST FBO EVAN ）
SPIEGEL; SUMMER FAMILY HOLDING, L.L.C., a ）
New Jersey limited liability company; DAVID F. ）
SWAIN; MARY ALICE SWAIN; MICHAEL ）
TOKARZ and FRED M. TOMERA, ）
                                               ）

            Plaintiffs, ）
                                                 ）

   v.

PURIZER CORPORATION, a Nevada corporation, ）
and BATTELLE MEMORIAL INSTITUTE, an Ohio ）
not for profit corporation, ）
                                               ）
            Defendants. ）

## COMPLAINT

     Plaintiffs, by their counsel, for their Complaint against defendants, Purizer Corporation and

Battelle Memorial Institute, state as follows:

### Nature of the Action

    1.     This is an action for, <u>inter alia</u>, securities fraud against defendants, Purizer

Corporation ("Purizer") and Battelle Memorial Institute ("Battelle"), by owners of preferred stock

(the "Preferred Stock") of Purizer. Plaintiffs purchased Preferred Stock of Purizer in reliance on

materially false and misleading statements by Defendants regarding the effectiveness and potential

for commercial exploitation of an oxidization vapor identified below as the "Purizer Vapor," and

have suffered significant financial losses as a result of these purchases.

### The Parties

    2.    Plaintiff Angell Investments, L.L.C. is an Illinois limited liability company having

its principal place of business in this judicial district. Angell Investments, L.L.C. invested $250,000

in Preferred Stock of Purizer.

3.      Plaintiff James Beedie resides in Downers Grove, Illinois.  James Beedie invested $1,000,000 in Preferred Stock of Purizer.

4.      Plaintiff Michael Carusillo resides in Hinsdale, Illinois.  Mr. Carusillo invested $250,000 in Preferred Stock of Purizer.

5.      Plaintiff William A. Castellano resides in Oak Brook, Illinois.  Mr. Castellano invested $500,000 in Preferred Stock of Purizer.

6.      Plaintiff CCF Partners II, LLC is a California limited liability company with its principal place of business in Beverly Hills, California.  CCF Partners II, LLC invested $1,500,000 in Preferred Stock of Purizer.

7.      Plaintiff Commodore Capital Management, L.L.C., is an Illinois limited liability company which has its principal place of business  in Winnetka, Illinois.  Commodore Capital Management, L.L.C. invested $75,000 in Preferred Stock of Purizer.

8.      Plaintiff CB & JM Construction, Pty., Ltd. is a corporation which has its principal place of business in Victoria, Australia.  CB & JM Construction, Pty., Ltd. invested $250,000 in Preferred Stock of Purizer.

9.      Plaintiff Michael Corbat resides in New York, New York.  Mr. Corbat invested $100,000 in Preferred Stock of Purizer.

10.      Plaintiff Salvatore A. Craparotta resides in Grosse Pointe, Michigan. Mr. Craparotta invested $250,000 in Preferred Stock of Purizer.

11.      Plaintiff Michael Dobbins resides in Queensland, Australia.  Plaintiff Michael Dobbins invested $500,000 in Preferred Stock of Purizer.

12.     Plaintiff Deborah Dobbins resides in Queensland, Australia.  Plaintiff Deborah Dobbins invested $500,000 in Preferred Stock of Purizer.

13.     Plaintiff William J. Finn, Jr., as Trustee of the William J. Finn, Jr. Declaration of Trust dated May 22, 1991, has his principal place of business in North Riverside, Illinois.  William J. Finn, Jr. Declaration of Trust invested $62,500 in Preferred Stock of Purizer.

14.     Plaintiff  Gentek, Inc. is a Delaware corporation that has its principal place of business in Hampton, New Hampshire.  Gentek, Inc. invested $1,500,000 in Preferred Stock of Purizer.

15.     Plaintiffs Albert Giusfredi and Ilene Giusfredi reside in Oak Brook, Illinois.  Mr. and Mrs.  Giusfredi invested $62,500 in Preferred Stock of Purizer.

16.     Plaintiff Harbour Investments, LP is a Delaware limited partnership having its principal place of business in New York, New York.  Harbour Investments, LP invested $1,000,000 in Preferred Stock of Purizer.

17.     Plaintiff Robert H. Huffman, III resides in Glenview, Illinois.  Mr. Huffman invested $250,000 in Preferred Stock of Purizer.

18.     Plaintiff John E. Jones resides in Hinsdale, Illinois.  Mr. Jones invested $150,000 in Preferred Stock of Purizer.

19.     Plaintiff Alison C. Knott resides in Ruxton, Maryland.  Ms. Knott invested $50,000 in Preferred Stock of Purizer.

20.     Plaintiff Carroll D. Knott resides in Ruxton, Maryland.  Mr. Knott invested $150,000 in Preferred Stock of Purizer.

21.     Plaintiff Carroll E. Knott resides in Ruxton, Maryland.  Mr. Knott invested $50,000

in Preferred Stock of Purizer.

22.     Plaintiff James F. Knott resides in Ruxton, Maryland.  James F. Knott invested $1,000,000 in Preferred Stock of Purizer.

23.     Plaintiff James F. Knott, Jr. resides in Timonium, Maryland.  James F. Knott, Jr. invested $50,000 in Preferred Stock of Purizer.

24.     Plaintiff Bruce L. Koepfgen resides in Winnetka, Illinois.  Mr. Koepfgen invested $500,000 in Preferred Stock of Purizer.

25.     Plaintiff William R. Langley resides in Naples, Florida.  Mr. Langley invested $250,000 in Preferred Stock of Purizer.

26.     Plaintiff LaTona Associates Fund I, LLC is a Delaware limited liability company that has its principal place of business in Hampton, New Hampshire.  LaTona Associates Fund I, LLC invested $500,000 in Preferred Stock of Purizer.

27.     Plaintiff Marshall Lees resides in Wilmette, Illinois.  Mr. Lees invested $50,000 in Preferred Stock of Purizer.

28.     Plaintiff David Lucas resides in Bonita Springs, Florida.  Mr. Lucas invested $250,000 in Preferred Stock of Purizer.

29.     Plaintiff James H. Marshall resides in Pine Valley, New Jersey.  Mr. Marshall invested $250,000 in Preferred Stock of Purizer.

30.     Plaintiffs Helen R. McDermott and Michael L. McDermott reside in Evanston, Illinois.  Mr. and Mrs. McDermott invested $62,500 in Preferred Stock of Purizer.

31.     Plaintiff Richard Alan McGrath, as Trustee of the Richard Alan McGrath Trust, has his principal place of business in Willow Springs, Illinois.  Richard Alan McGrath Trust invested

$100,000 in Preferred Stock of Purizer.

32.     Plaintiff Robert L. Pearson, as Trustee of the Jonas Pearson Trust, has his principal place of business in Dallas, Texas.  Jonas Pearson Trust  invested $50,000 in Preferred Stock of Purizer.

33.     Plaintiff Gene G. Petrie, as Trustee of the Gene G. Petrie Revocable Trust, has his principal place of business in Burr Ridge, Illinois.   Gene G. Petrie Revocable Trust  invested $250,000 in Preferred Stock of Purizer.

34.     Plaintiff John J. Ply, as Trustee of the John J. Ply 1987 Trust, as Restated, has his principal place of business in  in Hawthorne Woods, Illinois.  John J. Ply 1987 Trust, as Restated, invested $250,000 in Preferred Stock of Purizer.

35.     Plaintiff John Rothschild resides in Evanston, Illinois.  Mr. Rothschild invested $250,000 in Preferred Stock of Purizer.

36.     Plaintiff Charles Roven, as Trustee of the Steel Roven Revocable Trust, has his principal place of business in Los Angeles, California.  Steel Roven Revocable Trust  invested $200,000 in Preferred Stock of Purizer.

37.     Plaintiff Charles Roven, as Trustee of the Steel Roven Exemption Trust, has his principal place of business in Los Angeles, California.  Steel Roven Exemption Trust  invested $50,000 in Preferred Stock of Purizer.

38.     Plaintiff Charles Rubin, as Trustee of the AMC Investment Trust has his principal place of business in Westwood, Kansas.  AMC Investment Trust invested $250,000 in Preferred Stock of Purizer.

39.     Plaintiff Helene Spiegel, as Trustee of the Spiegel 1997 Irrevocable Trust FBO Evan

Spiegel, is a trust formed under California law with its principal place of business in Beverly Hills, California. Spiegel 1997 Irrevocable Trust FBO Evan Spiegel invested $125,000 in Preferred Stock of Purizer.

40. Plaintiff Helene Spiegel, as Trustee of the Spiegel 1997 Irrevocable Trust FBO Anthony Spiegel, is a trust formed under California law with its principal place of business in Beverly Hills, California. Spiegel 1997 Irrevocable Trust FBO Anthony Spiegel invested $125,000 in Preferred Stock of Purizer.

41. Summer Family Holding, L.L.C. is a New Jersey limited liability company with its principal place of business in Paramus, New Jersey. Summer Family Holding, L.L.C. invested $250,000 in Preferred Stock of Purizer.

42. Plaintiffs David F. Swain and Mary Alice Swain reside in Wellington, Nevada. Mr. and Mrs. Swain invested $250,000 in Preferred Stock of Purizer.

43. Plaintiff Michael Tokarz resides in New York, New York. Mr. Tokarz invested $1,000,000 in Preferred Stock of Purizer.

44. Plaintiff Fred M. Tomera resides in Chicago, Illinois. Mr. Tomera invested $62,500 in Preferred Stock of Purizer.

45. Purizer is a Nevada corporation which maintains its principal place of business in Oak Brook, Illinois. Purizer owns or licenses a process for eliminating contamination and destroying microorganisms by oxidization. This process employs an electric current to generate a disinfecting vapor from air and water (the "Purizer Vapor").

46. Battelle is an Ohio not for profit corporation which maintains its principal place of business in Columbus, Ohio. Battelle also maintains a place of business in this judicial district.

Battelle is an international science and engineering company with expertise in the business of evaluating and developing new technologies and products.

## Jurisdiction and Venue

47. This Court has jurisdiction over the subject matter of Counts I and II of this action pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331. Counts I and II arise under Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b) and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

48. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims asserted in Counts III - VI as these claims are so related to the claims asserted in Counts I and II that they form part of the same case or controversy under Article III of the United States Constitution.

49. Venue is proper in this district pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) in that a substantial part of the events and omissions giving rise to the claim occurred in this district and Purizer resides in this district.

## Battelle's Confirmation of the Commercial
## Potential of the Purizer Technology

50. At some time prior to the events described herein, Purizer, then known as "Bioxide Corporation," obtained by license the rights to certain oxidization purification technology from Elopak Systems, A.G. ("Elopak").

51. Pursuant to a License Agreement dated December 11, 1998 (the "1998 License Agreement"), Purizer retained Battelle to "design and conduct a testing program to determine the efficacy" of certain technology, which included the technology licensed from Elopak. The

technology which was the subject of the 1998 License Agreement is either the same as, or serves as the basis for, the technology which underlies the process which produces the Purizer Vapor.

52.     Battelle entered into a series of agreements with Purizer, then known as Bioxide Corporation, for testing the efficacy of the Purizer Vapor as a sterilization and decontamination process. These agreements included numerous Research and Development Services Agreements and a Master Research and Development Agreement dated June 8, 2000 (the "Consulting Services Agreements").

53.     Based on the work Battelle performed for Purizer pursuant to the 1998 License Agreement and the Consulting Services Agreements, Battelle designed and built a series of generators to produce the Purizer Vapor and developed one or more formulas for combining air and water under different levels of pressure and/or electrical current to produce the Purizer Vapor.

54.     On or about December 31, 1999, based on the work Battelle performed for Purizer pursuant to the 1998 License Agreement and the Consulting Services Agreements, Battelle advised Purizer that the Purizer Vapor process was significantly superior to ozone based and chlorine based purification processes.

## The Purizer Business Plan

55.     On or about March 1, 2000, the officers and directors of Purizer, working with Battelle, elected to raise capital by issuing a class of preferred stock in Purizer identified as "Series A Preferred Stock."

56.     Purizer and Battelle formulated a business plan identified as the "Purizer Business Plan March 2000" (the "Business Plan"). The Business Plan with the knowledge and approval of Battelle was distributed to prospective investors in Purizer to induce them to purchase Preferred

Stock.

57.     As described in the Business Plan, the business of Purizer was expected to consist entirely of the development and marketing of the Purizer Vapor process. All revenues of Purizer would be derived from market applications of the Purizer Vapor, including sales of generators which produce the Purizer Vapor. The entire business potential of Purizer and the success or failure of Plaintiffs' investment in the Preferred Stock was dependent on the commercial viability of the Purizer Vapor process.

58.     The Business Plan identified Battelle as "Purizer's foundational research and development partner," and stated that: "Battelle has validated the efficacy of the Purizer technologies. Battelle has invested in Purizer Corporation."

59.     The Business Plan further stated that:

> Ozonation is a competitive disinfectant method that has been gaining wide acceptance. *Purizer's research partner, the highly regarded Battelle Memorial Institute, has determined that the Purizer Vapor is five times more effective than an equivalent amount of ozone.* (Emphasis added).

60.     The foregoing statements in the Business Plan regarding the effectiveness of the Purizer Vapor and Battelle's validation of the efficacy of the Purizer Vapor were false and misleading.

61.     Purizer and Battelle failed to include in the Business Plan any statement that Battelle had no scientifically supported data demonstrating that the Purizer Vapor is more effective than ozone.

62.     The Business Plan was distributed to potential investors in Purizer to persuade potential investors of the merits of purchasing Preferred Stock in Purizer. Plaintiffs purchased the

Preferred Stock in reliance on statements made in the Business Plan regarding the effectiveness of the Purizer Vapor and it's considerable commercial potential.

**Investor Sales Presentations**

63.     In connection with the offer of Series A Preferred Stock, Purizer, working with Battelle, held six presentations to potential investors as follows:

(a)     On April 13, 2000, an investor sales presentation was held at the headquarters of Battelle in Columbus, Ohio ("the April 13 Presentation"). On behalf of Battelle, Gregory L. Frank, Vice President and Deputy, Government Market Sectors, John Moorehead and Terry Hill attended the April 13 Presentation. John Gorman, Dave Beedie and others attended this presentation on behalf of Purizer.

(b)     On April 18, 2000, an investor sales presentation was held at Butler National Golf Club in Oak Brook, Illinois ("the April 18 Presentation"). Dave Beedie and others attended the April 18 Presentation on behalf of Purizer.

(c)     On April 21, 2000, an investor sales presentation was held at the headquarters of Battelle in Columbus, Ohio ("the April 21 Presentation"). Messrs. Frank, Moorehead and Hill attended the April 21 Presentation on behalf of Battelle. John Gorman, Dave Beedie and others attended this presentation on behalf of Purizer.

(d)     On May 16, 2000, an investor sales presentation was held at the offices of Purizer in Oak Brook, Illinois ("the May 16 Presentation"). John Moorehead and Steven Easley attended the May 16 Presentation on behalf of Battelle.

Dave Beedie and others attended this presentation on behalf of Purizer.

(e) On May 23, 2000, an investor sales presentation was held at the headquarters of Battelle in Columbus, Ohio ("the May 23 Presentation"). Messrs. Frank, Moorehead and Hill attended the May 23 Presentation on behalf of Battelle. John Gorman, Dave Beedie and others attended this presentation on behalf of Purizer.

(f) On May 24, 2000, an investor sales presentation was held at the offices of Spiegel in Los Angeles, California ("the May 24 Presentation"). John Gorman, Dave Beedie and others attended the May 24 Presentation on behalf of Purizer.

64. The April 13 Presentation, the April 21 Presentation and the May 23 Presentation included speeches by Battelle executives and tours of Battelle's facilities, including demonstrations of the prototype equipment built specifically for Purizer by Battelle.

65. Each of the investor sales presentations featured a slide show (the "Slide Presentation") which was presented to the potential investors in substantially the same form. Battelle prepared or contributed materially to the preparation of a portion of the slides shown to the prospective investors, including those portions of the investment presentation which were narrated by John Moorehead of Battelle.

66. The Slide Presentation included false and misleading statements regarding the power and effectiveness of the Purizer Vapor. The Slide Presentation included a statement that the Purizer Vapor has components which include Oxygen, the singlet Oxygen ion, ozone, hydroxyl radicals and hydrogen peroxide. This statement was false and misleading because the Purizer Vapor consists of

ozone and hydrogen peroxide and does not contain in any significant quantities either the singlet Oxygen ion or hydroxl radicals.

67.     The Slide Presentation compared the Purizer Vapor to ozone and stated that the Purizer Vapor is five times more powerful than an equivalent amount of ozone. It was further stated that, in comparison to ozone, the Purizer Vapor is "less corrosive at application concentrations" and has a "lower capital cost and power consumption." These statements were false and misleading because the Purizer Vapor has not been shown to be more effective than or different from ozone in eliminating biological decontamination.

68.     At the April 21 Presentation, Greg Frank discussed Battelle's extensive experience in turning scientific ideas into commercial applications. Mr. Frank stated, inter alia, that:

(a)     "Battelle and Purizer started like a lot of activities. Someone brings an idea to Battelle and asks us to determine whether there is scientific validity to it and which direction to go;"

(b)     The process of reviewing new technologies and evaluating them for commercial application was "something that Battelle does on a routine basis;"

(c)     "This is what we do: contract research and commercialization of technology. That is why we have developed a partnership and are doing this together;"

(d)     "The technology was brought to Battelle's attention. We took a look at it, and I was excited. We seen (sic) that it was very broad and had a lot of potential applications in commercial entities and that's why we decided to make an equity investment in Bioxide, now Purizer Corporation, and become partners;" and

(e)     "We are working with Dave Beedie and his folks to identify which

applications in the marketplace are most attractive and which direction we should take. We are taking this to market together."

69.     These and other similar statements were made by Battelle to induce Plaintiffs to rely on Battelle's scientific expertise in connection with their decision to purchase Purizer stock. Plaintiffs relied on Battelle's expertise and evaluation of the Purizer Vapor in purchasing Purizer stock.

70.     The April 21 Presentation also included a presentation by John Moorehead of Battelle. Mr. Moorehead made the following false and misleading statements at the April 21 Presentation to induce the attendees to invest in Purizer:

(a)     describing the creation of the Purizer Vapor, he stated: "The way we do it, we excite ozone, which is the starting gas, in the presence of water vapor...with UV light at a particular frequency .... What you get is a vapor mixture of *ions....Together [the ions] are significantly better than the ozone itself*" (Emphasis added);

(b)     he stated, *"our vapor based on Battelle's work is 5 times more effective than ozone and 1 ½ times more effective than chlorine."* (Emphasis added);

(c)     while displaying a slide entitled "Versus Ozone" containing a statement "up to 5x more powerful," he stated: "Where we think we are is. In air, up to five times more powerful than ozone with a much higher oxidative potential, and we have demonstrated that in entrained air kills. *Because you can use significantly less of this Purizer Vapor than an ozone equivalent, we feel that we are less corrosive to many materials and that we likely have a lower capital cost and power consumption.* (Emphasis added);

(d)     in referring to tests of the Purizer Vapor process at ConAgra's Greeley,

Colorado facility he stated: "What we concluded was a series of tests of air handling systems. We demonstrated to the folks at ConAgra that we were actually capable of collecting and destroying the microorganisms that are in their plant, in their factory, all the time. *We ran a series of experiments that demonstrated a 95% kill rate. That's a phenomenal number. Very high for this type of system compared to what's out there and available now.* " (Emphasis added); and

        (e)    in responding to a question from a prospective investor whether the Purizer Vapor technology could be duplicated by a third party competitor he stated: "Purizer is not replacing a technology ... *We are entering a market niche with no other alternative.*" (Emphasis added).

71.    At no time during the April 21 Presentation did either Mr. Frank or Mr. Moorehead, or any other representative of Battelle, advise the potential investors that Battelle had no scientifically supported data demonstrating that the Purizer Vapor was more effective at treating biological contamination than either ozone, chlorine or ultraviolet light, or, in fact, had research which contradicted the statements identified in Paragraph 70 hereof.

72.    The April 21 Presentation was videotaped. The videotape of the April 21 Presentation was subsequently shown to potential investors in Purizer.

73.    The statements made by Battelle and Purizer at the investor presentations were made with the intention that the Plaintiffs would rely on those statements in making an investment in Purizer, including not only the Plaintiffs who attended the investor presentations, but also including the Plaintiffs who viewed videotapes of any of the investor presentations and Plaintiffs who relied on statements of other Plaintiffs who attended the investor presentations.

### Knowledge of the Falsity of
### Statements Made to Potential Investors

74. Defendants either knew or were reckless in not knowing that the representations made by Purizer and Battelle to potential investors regarding the effectiveness of the Purizer Vapor were false when made. Moreover, Battelle knew at all relevant times that it had no scientifically supported data demonstrating that the Purizer Vapor performed better than ozone.

### The Sale of Preferred Stock

75. On or about June 12, 2000, Purizer distributed a document entitled "Bioxide Corporation Information Statement" (the "Offering Memorandum") to Plaintiffs and other persons who were considering making an investment in the Preferred Stock of Purizer. Because the Offering Memorandum was circulated before the date on which the name of Bioxide Corporation was legally changed to "Purizer Corporation," the Offering Memorandum refers to the owner of the Purizer Vapor process as "Bioxide."

76. There is no statement in the Offering Memorandum that Purizer and Battelle had no scientifically supported data demonstrating that the Purizer Vapor was more effective at treating biological contamination than either ozone, chlorine or ultraviolet light.

77. On or about July 2000, acting in reliance on the statements of Purizer and Battelle regarding the effectiveness and potential for commercial exploitation of the Purizer Vapor, Plaintiffs and other individual investors contributed cash to Purizer in exchange for the Preferred Stock.

### Post-Sale of Preferred Stock Confirmation
### of Falsity of Statements Made to Potential Investors

78. Sometime between December 6, 2000 and March 6, 2001, Purizer directed third parties to evaluate the effectiveness of the Purizer Vapor against ozone. The parties who conducted

the research were Bollyky Associates, the Tulane University School of Public Health, and Battelle. Purizer instructed these contractors to determine whether, consistent with the prior representations to Preferred Shareholders, the Purizer Vapor process was superior to ozone based and chlorine based decontamination processes, either as to cost or as to effectiveness in killing bacteria.

79. Based on this testing, it was determined that the Purizer Vapor appeared to be composed solely of ozone and hydrogen peroxide and did not contain any highly reactive oxidative species of short lived oxygen ions. Moreover, the tests established that the Purizer Vapor was no more effective than ozone.

80. Instead, based on its testing, Battelle concluded that *"[o]ver the whole range of testing, the results did not show a statistically significant difference between Ozone and Purizer Vapor in the disinfection efficacy."*

81. In May 2001, Plaintiffs each received a letter from Purizer advising them that commercialization of the Purizer Vapor was not feasible because it has no significant advantage over existing technologies including ozone.

## Count I

### Violation of Section 10(b) of the
### 1934 Act and Rule l0b-5 - Battelle

82. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 81 of this Complaint as paragraph 82 of this Count I.

83. Battelle knowingly or recklessly engaged in acts, transactions, practices and courses of business that operated as a fraud and deceit upon Plaintiffs, and Battelle intentionally and/or recklessly made or participated in the making or issuing of various deceptive and untrue statements

of material facts. Battelle omitted to state material facts necessary in order to make the statements made, in light of the context in which they were made, not misleading to Plaintiffs.

84.     The purpose of Battelle's scheme was to induce Plaintiffs to purchase the Preferred Stock. The effect of Battelle's scheme was that Plaintiffs purchased the Preferred Stock at artificially inflated prices.

85.     Plaintiffs reasonably relied to their detriment on Battelle's representations and statements in deciding to purchase the Preferred Stock.

86.     As a direct result of the misrepresentations and omissions made by Battelle, Plaintiffs have suffered substantial monetary damages.

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against defendant Battelle Memorial Institute and that they be awarded compensation for the damages which they have sustained as a result of Defendants' unlawful conduct, together with reasonable attorneys' fees, experts' fees, interest and cost of suit, and such other and further relief as this Court may deem appropriate.

## Count II

### Violation of Section 10(b) of the
### 1934 Act and Rule 10b-5 - Purizer

87.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 81 of this Complaint as paragraph 87 of this Count II.

88.     Purizer knowingly or recklessly engaged in acts, transactions, practices and courses of business that operated as a fraud and deceit upon Plaintiffs, and Purizer intentionally and/or recklessly made or participated in the making or issuing of various deceptive and untrue statements

of material facts. Purizer omitted to state material facts necessary in order to make the statements made, in light of the context in which they were made, not misleading to Plaintiffs.

89. In making the representations about the efficacy of the Purizer Vapor, Battelle was acting as Purizer's agent specifically authorized by Purizer to make these representations to Plaintiffs for the purpose of inducing them to buy stock in Purizer. As a result, Purizer is primarily liable to Plaintiffs or liable as principal for the acts of its agent Battelle.

90. The purpose of the representations was to induce Plaintiffs to purchase the Preferred Stock. The effect of the representations was that Plaintiffs purchased the Preferred Stock at artificially inflated prices.

91. Plaintiffs reasonably relied to their detriment on Purizer's and it's agent Battelle's representations and statements in deciding to purchase the Preferred Stock.

92. As a direct result of the misrepresentations and omissions made by Purizer and it's agent, Battelle, Plaintiffs have suffered substantial monetary damages.

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against defendant Purizer Corporation and that they be awarded compensation for the damages which they have sustained as a result of Defendants' unlawful conduct, together with reasonable attorneys' fees, experts' fees, interest and cost of suit, and such other and further relief as this Court may deem appropriate.

## Count III

### Violation of the Illinois
### Securities Law - Battelle

93. Plaintiffs reallege and incorporate by reference each and every allegation contained

in paragraphs 1 through 81 of this Complaint as paragraph 93 of this Count III.

94.     Battelle knowingly or recklessly engaged in acts, transactions, practices and courses of business that operated as a fraud and deceit upon Plaintiffs, and Battelle intentionally and/or recklessly made or participated in the making or issuing of various deceptive and untrue statements of material facts, and Battelle omitted to state material facts necessary in order to make the statements made, in light of the context in which they were made, not misleading to Plaintiffs.

95.     The purpose of Battelle's scheme was to induce Plaintiffs to purchase the Preferred Stock. The effect of Battelle's scheme was that Plaintiffs purchased the Preferred Stock at artificially inflated prices.

96.     Plaintiffs reasonably relied to their detriment on Battelle's representations and statements in deciding to purchase the Preferred Stock.

97.     As a direct result of the misrepresentations and omissions made by Battelle, Plaintiffs have suffered substantial monetary damages.

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against defendant Battelle Memorial Institute and that they be awarded compensation for the damages which they have sustained as a result of Defendants' unlawful conduct, together with reasonable attorneys' fees, experts' fees, interest and cost of suit, and such other and further relief as this Court may deem appropriate.

### Count IV

**Violation of the Illinois
Securities Law - Purizer**

98.     Plaintiffs reallege and incorporate by reference each and every allegation contained

in paragraphs 1 through 81 of this Complaint as paragraph 98 of this Count IV.

99.     Purizer knowingly or recklessly engaged in acts, transactions, practices and courses of business that operated as a fraud and deceit upon Plaintiffs, and Purizer intentionally and/or recklessly made or participated in the making or issuing of various deceptive and untrue statements of material facts, and Purizer omitted to state material facts necessary in order to make the statements made, in light of the context in which they were made, not misleading to Plaintiffs.

100.    The purpose of Purizer's scheme was to induce Plaintiffs to purchase the Preferred Stock. The effect of Purizer's scheme was that Plaintiffs purchased the Preferred Stock at artificially inflated prices.

101.    Plaintiffs reasonably relied to their detriment on Purizer's representations and statements in deciding to purchase the Preferred Stock.

102.    As a direct result of the misrepresentations and omissions made by Purizer, Plaintiffs have suffered substantial monetary damages.

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against defendant Purizer Corporation and that they be awarded compensation for the damages which they have sustained as a result of Defendants' unlawful conduct, together with reasonable attorneys' fees, experts' fees, interest and cost of suit, and such other and further relief as this Court may deem appropriate.

## Count V

## Fraud - Battelle

103.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 81 of this Complaint as paragraph 103 of this Count V.

104.    Battelle made fraudulent representations at investor presentations regarding the effectiveness of the Purizer Vapor which were incorporated into offering materials provided to Plaintiffs and other prospective investors.

105.    Battelle made the fraudulent representations to induce Plaintiffs to purchase Preferred Stock in Purizer.  Plaintiffs were induced to and did purchase Preferred Stock in reliance on the representations made by Battelle.

106.    Battelle knew the representations made to Plaintiffs were false and misleading, or, in the alternative, recklessly disregarded the evidence which would have showed that those representations were false.  Battelle's conduct was malicious, willful and wanton.

107.    As a direct result of Battelle's conduct, Plaintiffs have suffered substantial monetary damages.

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against defendant Battelle Memorial Institute and that they be awarded compensatory and punitive damages and such other and further relief as this Court may deem appropriate.

## Count VI

### Negligent Misrepresentation - Battelle

108.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 81 of this Complaint as paragraph 108 of this Count VI.

109.    Battelle's primary business is to provide scientific advice and scientific information to customers.

110.    In making the representations on the efficacy of the Purizer Vapor to Plaintiffs, Battelle expected Plaintiffs to rely on its representations in purchasing Purizer stock.

111. Battelle's representations at the investor presentations regarding the effectiveness of the Purizer Vapor which were incorporated into offering materials provided to Plaintiffs and other prospective investors were untrue.

112. These representations were grossly negligent and made by Battelle without regard to their truthfulness or accuracy.

113. Plaintiffs were induced to and did purchase Preferred Stock in reliance on the representations made by Battelle.

114. As a direct result of Battelle's conduct, Plaintiffs have suffered substantial monetary damages.

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against defendant Battelle Memorial Institute and that they be awarded compensatory and punitive damages and such other and further relief as this Court may deem appropriate.

### JURY DEMAND

Plaintiffs demand trial by jury on all issues.

ANGELL INVESTMENTS L.L.C., an Illinois limited liability company; JAMES BEEDIE; MICHAEL CARUSILLO; WILLIAM A. CASTELLANO; CCF PARTNERS II, LLC, a California limited liability company; COMMODORE CAPITAL MANAGEMENT, L.L.C., an Illinois limited liability company; MICHAEL CORBAT; SALVATORE A. CRAPAROTTA; WILLIAM J. FINN, JR. as TRUSTEE under the WILLIAM J. FINN, JR. DECLARATION OF TRUST DATED MAY 22, 1991; GENTEK, INC., a Delaware corporation; ALBERT GIUSFREDI; ILENE GIUSFREDI; HARBOUR INVESTMENTS, LP, a Delaware limited partnership; ROBERT H. HUFFMAN III; JOHN E. JONES; ALISON C. KNOTT; CARROLL D. KNOTT; CAROLL E. KNOTT; JAMES F. KNOTT; JAMES F. KNOTT; JR.;

BRUCE L. KOEPFGEN; WILLIAM R. LANGLEY; LA-TONA ASSOCIATES FUND I, LLC, a Delaware limited liability company; MARSHALL LEES; DAVID LUCAS; JAMES H. MARSHALL; HELEN R. McDERMOTT; MICHAEL L. McDERMOTT; RICHARD ALAN Mc-GRATH, as TRUSTEE of the RICHARD ALAN Mc-GRATH TRUST; ROBERT L. PEARSON, as TRUSTEE of the JONAS PEARSON TRUST; GENE G. PETRIE, TRUSTEE of the GENE G. PETRIE TRUST; JOHN J. PLY, as TRUSTEE of the JOHN J. PLY 1987 TRUST AS RESTATED; JOHN ROTHSCHILD; CHARLES ROVEN, as TRUSTEE of the STEEL ROVEN REVO-CABLE TRUST; CHARLES ROVEN, as TRUSTEE of the STEEL ROVEN EXEMPTION TRUST; CHARLES RUBIN, as TRUSTEE OF THE AMC INVESTMENT TRUST; LEO SCHLINKERT; HELENE SPIEGEL, as TRUSTEE of the SPIEGEL 1999 IRREVOCABLE TRUST FBO ANTHONY SPIEGEL; HELENE SPIE-GEL, as TRUSTEE of the SPIEGEL 1999 IRREVOCA-BLE TRUST FBO EVAN SPIEGEL; SUMMER FAM-ILY HOLDING, L.L.C., a New Jersey limited liability company; DAVID F. SWAIN; MARY ALICE SWAIN; MICHAEL TOKARZ and FRED A. TOMERA.

By: _____
      One of the Attorneys for Plaintiffs

Roger L. Longtin (06189185)
Stephen L. Agin (06185019)
Piper Marbury Rudnick & Wolfe
203 N. LaSalle Street
Chicago, Illinois 60601-1293
(312) 368-4000

JS - 44
Rev 1991

# CIVIL COVER SHEET

01C 6359

The JS – 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS

JUDGE LINDBERG

ANGELL INVESTMENTS L.L.C., and others listed on Attachment 1(a)

## DEFENDANTS

PURIZER CORPORATION and BATTELLE MEMORIAL INSTITUTE

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___COOK___
(EXCEPT IN U.S. PLAINTIFF CASES)

MAGISTRATE JUDGE BOBRICK

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___Du Page___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Piper Marbury Rudnick & Wolfe
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601-1293
Roger L. Longtin, Esq. (312) 368-4040

ATTORNEYS (IF KNOWN)
Elmer Stahl Klevorn & Solberg
122 South Michigan Avenue, Suite 1770
Chicago, Illinois 60603
Michael I. Miller, Esq. (312) 435-9345

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☒ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation

Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. §1331, 15 U.S.C. §78aa, 78j(b), 17 C.F.R. §240.10b-5 (See Attachment VI)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ in excess of $15,000,000.00

CHECK YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____  DOCKET NUMBER _____

DATE 8-16-01

SIGNATURE OF ATTORNEY OF RECORD _Stephen T. Agin_

312-435-9345ATTCHMENT VI
TO
CIVIL COVER SHEET

CAUSE OF ACTION

Brief Statement of Cause

Cause is a claim under federal securities law for misrepresentation, claim under state law for fraud, negligent misrepresentation and violations of state securities laws.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

Angell Investments L.L.C., et al

v.

Purizer Corporation and Battelle Memorial Institute

JUDGE LINDBERG

**01C 6359**

Case Number:

MAGISTRATE JUDGE BOBRICK

DOCKETED

AUG 3 0 2001

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiffs listed on Attachment A

| (A) | | | | (B) | | | |
|---|---|---|---|---|---|---|---|
| SIGNATURE | | | | SIGNATURE | | | |
| NAME Roger L. Longtin | | | | NAME Stephen L. Agin | | | |
| FIRM Piper Marbury Rudnick & Wolfe | | | | FIRM Piper Marbury Rudnick & Wolfe | | | |
| STREET ADDRESS 203 North LaSalle Street, Suite 1800 | | | | STREET ADDRESS 203 North LaSalle Street, Suite 1800 | | | |
| CITY/STATE/ZIP Chicago, Illinois 60601-1293 | | | | CITY/STATE/ZIP Chicago, Illinois 60601-1293 | | | |
| TELEPHONE NUMBER (312) 368-4040 | | | | TELEPHONE NUMBER (312) 368-4076 | | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06189185 | | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06189019 | | | |
| MEMBER OF TRIAL BAR? | YES ☒ | NO ☐ | | MEMBER OF TRIAL BAR? | YES ☒ | NO ☐ | |
| TRIAL ATTORNEY? | YES ☒ | NO ☐ | | TRIAL ATTORNEY? | YES ☒ | NO ☐ | |
| | | | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | |
| (C) | | | | (D) | | | |
| SIGNATURE | | | | SIGNATURE | | | |
| NAME | | | | NAME | | | |
| FIRM | | | | FIRM | | | |
| STREET ADDRESS | | | | STREET ADDRESS | | | |
| CITY/STATE/ZIP | | | | CITY/STATE/ZIP | | | |
| TELEPHONE NUMBER | | | | TELEPHONE NUMBER | | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | |
| TRIAL ATTORNEY? | YES ☐ | NO ☐ | | TRIAL ATTORNEY? | YES ☐ | NO ☐ | |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | |

ATTACHMENT A
TO
APPEARANCE FORM

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

ANGELL INVESTMENTS L.L.C., an Illinois limited liability company; JAMES BEEDIE; MICHAEL CARUSILLO; WILLIAM A. CASTELLANO; CB & JM CONSTRUCTION, PTY., LTD.; CCF PARTNERS II, LLC, a California limited liability company; COMMODORE CAPITAL MANAGEMENT, L.L.C., an Illinois limited liability company; MICHAEL CORBAT; SALVATORE A. CRAPAROTTA; MICHAEL DOBBINS; DEBORAH DOBBINS; WILLIAM J. FINN, JR. as TRUSTEE under the WILLIAM J. FINN, JR. DECLARATION OF TRUST DATED MAY 22, 1991; GENTEK, INC., a Delaware corporation; ALBERT GIUSFREDI; ILENE GIUSFREDI; HARBOUR INVESTMENTS, LP, a Delaware limited partnership; ROBERT H. HUFFMAN III; JOHN E. JONES; ALISON C. KNOTT; CARROLL D. KNOTT; CAROLL E. KNOTT; JAMES F. KNOTT; JAMES F. KNOTT, JR.; BRUCE L. KOEPFGEN; WILLIAM R. LANGLEY; LATONA ASSOCIATES FUND I, LLC, a Delaware limited liability company; MARSHALL LEES; DAVID LUCAS; JAMES H. MARSHALL; HELEN R. McDERMOTT; MICHAEL L. McDERMOTT; RICHARD ALAN McGRATH, as TRUSTEE of the RICHARD ALAN McGRATH TRUST; ROBERT L.PEARSON, as TRUSTEE of the JONAS PEARSON TRUST; GENE G. PETRIE, TRUSTEE of the GENE G. PETRIE TRUST; JOHN J. PLY, as TRUSTEE of the JOHN J. PLY 1987 TRUST, AS RESTATED; JOHN ROTHSCHILD; CHARLES ROVEN, as TRUSTEE of the STEEL ROVEN REVOCABLE TRUST; CHARLES ROVEN, as TRUSTEE of the STEEL ROVEN EXEMPTION TRUST; CHARLES RUBIN, as TRUSTEE of the AMC INVESTMENT TRUST; LEO SCHLINKERT; HELENE SPIEGEL, as TRUSTEE of the SPIEGEL 1999 IRREVOCABLE TRUST FBO ANTHONY SPIEGEL; HELENE SPIEGEL, as TRUSTEE of the SPIEGEL 1999 IRREVOCABLE TRUST FBO EVAN SPIEGEL; SUMMER FAMILY HOLDING, L.L.C., a New Jersey limited liability company; DAVID F. SWAIN; MARY ALICE SWAIN; MICHAEL TOKARZ and FRED M. TOMERA