# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6359 | **DATE** | 1/4/2002 |
| **CASE TITLE** | Angell, et al. Vs. Purizer Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendants' motions to dismiss are denied (21-1 and 26-1). Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 0 7 2002 | |
| | Notified counsel by telephone. | | date docketed | 45 |
| ✓ | Docketing to mail notices. | | CM | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| SLB | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELL INVESTMENTS, L.L.C., an Illinois limited liability company, et al. Plaintiffs, v. PURIZER CORPORATION, a Nevada corporation, and BATTELLE MEMORIAL INSTITUTE, an Ohio not-for-profit corporation, Defendants. | 01 C 6359 Judge George W. Lindberg |

**MEMORANDUM OPINION AND ORDER**

Defendant Purizer Corporation ("Purizer") has moved to dismiss Count II of plaintiffs' amended complaint, and defendant Battelle Memorial Institute ("Battelle") has moved to dismiss the remaining counts. For the reasons stated below, Purizer's motion to dismiss Count II is denied, and Battelle's motion to dismiss is granted in part and denied in part.

**I. Factual Background**

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in plaintiff's favor. MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc., 62 F.3d 967, 972 (7th Cir. 1995). According to the allegations in the amended complaint, between 1998 and 2000, Purizer entered into a series of agreements with Battelle, under which Battelle agreed to test the efficacy of a sterilization and decontamination process held by Purizer (the "Purizer Vapor"). Battelle also designed and built generators to produce the Purizer Vapor. On December 31, 1999, Battelle reported to Purizer that the Purizer Vapor was significantly superior to competing purification processes.

To raise capital, Purizer decided to issue a class of preferred stock. The success of any investment in this stock would be entirely dependent on the commercial viability of the Purizer Vapor. Purizer and Battelle developed a business plan, which described Battelle as Purizer's research and development partner. The plan stated that Battelle had validated the efficacy of the Purizer Vapor and determined that it was five times more effective than ozone. This statement regarding the efficacy of the Purizer Vapor was false. The business plan did not indicate that defendants had no scientifically supported data demonstrating that the Purizer Vapor was more effective than ozone. The business plan was distributed to potential investors.

In April and May 2000, Purizer and Battelle held six presentations to potential investors in the preferred stock. Each of the six presentations included a slide presentation, a portion of which was prepared by Battelle. The slide presentations included statements that the Purizer Vapor contains the singlet oxygen ion and hydroxyl radicals, and that the Purizer Vapor is five times more powerful than ozone, less corrosive, and has a lower capital cost and power consumption than ozone. These statements were false. Three of the presentations were held at Battelle's headquarters, and included speeches by Battelle executives, tours of Battelle's facilities, and demonstrations of prototype equipment built for Purizer. In one of these presentations, held on April 21, 2000, Battelle executives spoke about Battelle's experience and the Purizer Vapor's effectiveness as compared to ozone, and stated that with the Purizer Vapor they were entering a market niche with no other alternative. The April 21, 2000 presentation was videotaped, and the tape was subsequently shown to other potential investors.

On June 12, 2000, Purizer distributed an offering memorandum entitled the "Bioxide Corporation[1] Information Statement" to plaintiffs and other potential investors. The information statement did not indicate that defendants had no scientifically supported data demonstrating that the Purizer Vapor treated biological contamination more effectively than its competitors.

---

[1] "Bioxide Corporation" is the former name of Purizer.

In July 2000, the 51 plaintiffs and others invested in Purizer's preferred stock. Plaintiffs' investments ranged from $25,000 to $1.5 million.

Between December 6, 2000 and March 6, 2001, Purizer obtained an independent analysis of the Purizer Vapor. The independent analysis revealed that, contrary to defendants' representations, the Purizer Vapor was composed solely of ozone and hydrogen peroxide, and that it was no more effective than ozone. In May 2001, plaintiffs each received a letter from Purizer, informing them that the commercialization of the Purizer Vapor was not feasible because it had no significant advantage over existing technologies, including ozone.

Plaintiffs brought suit against Battelle and Purizer, alleging violations of section 10(b) of the Securities Exchange Act of 1934, see 15 U.S.C. § 78j(b), and Rule 10b-5, see 17 C.F.R. § 240.10b-5, by each defendant (Counts I and II, respectively), and common law fraud (Count III) and negligent misrepresentation (Count IV) by Battelle.

## II. Motion to Dismiss Standard

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must consider "whether relief is possible under any set of facts consistent with the allegations of the plaintiff's complaint." Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 839 (7th Cir. 1999). That is, if it is possible to hypothesize a set of facts that would entitle the plaintiff to relief, consistent with the allegations in the complaint, dismissal under Rule 12(b)(6) is inappropriate. See Grachling v. Village of Lombard, 58 F.3d 295, 297 (7th Cir. 1995). "[A]lthough plaintiffs can plead conclusions, the conclusions must provide the defendant with at least minimal notice of the claim." Jackson v. Marion County, 66 F.3d 151, 154 (7th Cir. 1995). A plaintiff can "plead himself out of court by alleging facts which show that he has no claim." Id.

### A. Scienter

Defendants both argue that the section 10(b) claims in Counts I and II should be dismissed for failure to adequately plead scienter. To establish liability under section 10(b) and Rule 10b-5, a plaintiff must prove that "(1) the defendant made a false statement or omission (2)

3

of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th Cir. 1997). The Private Securities Litigation Reform Act ("PSLRA") also requires plaintiffs in securities fraud cases to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Seventh Circuit has yet to address just how rigorous this pleading standard is. Cases in the Northern District of Illinois have generally followed the Second Circuit's pleading standard, which requires plaintiffs to allege facts either (1) showing that the defendant had both motive and opportunity to commit fraud; or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. See, e.g., In re Westell Techs., Inc., No. 00 C 6735, 2001 WL 1313785, at *10 (N.D. Ill. Oct. 26, 2001); Danis v. USN Communications, Inc., 73 F. Supp. 2d 923, 937 (N.D. Ill. 1999); Rehm v. Eagle Fin. Corp., 954 F. Supp. 1246, 1253 (N.D. Ill. 1997). For the purposes of showing strong circumstantial evidence of recklessness, reckless conduct is "highly unreasonable [conduct]" – "an extreme departure from the standards of ordinary care...to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Rehm, 954 F. Supp. at 1255.

**1. Count I**

Battelle contends that plaintiffs' fraud claims against it should be dismissed because plaintiffs fail to allege that Battelle had a motive to defraud them. However, a motive need not be alleged if there is strong circumstantial evidence of conscious misbehavior or recklessness. See Rehm, 954 F. Supp. at 1255. Here, the amended complaint alleges that Battelle is an international science and engineering company with expertise in evaluating and developing new technologies and products. According to the amended complaint, Battelle falsely represented to plaintiffs that it had validated the efficacy of the Purizer Vapor, that the technology contained the singlet oxygen ion and hydroxl radicals, and that the Purizer Vapor was five times more effective

4

than ozone. These allegations are sufficient at this early stage of litigation to plead strong circumstantial evidence of conscious misbehavior or recklessness.

### 2. Count II

Purizer contends that Count II should be dismissed because the allegations in the amended complaint fail to establish scienter sufficient to support a finding of primary liability against Purizer. According to Purizer, the allegations in the amended complaint relating to knowledge establish only that Battelle tested the Purizer Vapor, and that Purizer reasonably relied on Battelle's representations regarding the results of Battelle's tests when it developed the business plan and presented information to potential investors. Purizer argues that the only allegations in the amended complaint relating to Purizer's knowledge are general, conclusory ones that fail to meet the standard for scienter.

This court agrees. The amended complaint contains only two allegations relating to Purizer's own knowledge:

> 79. Defendants either knew or were reckless in not knowing that the representations made by Purizer and Battelle to potential investors regarding the effectiveness of the Purizer Vapor were false when made.
> ....
>
> 93. Purizer knowingly or recklessly engaged in acts, transactions, practices and courses of business that operated as a fraud and deceit upon Plaintiffs, and Purizer intentionally and/or recklessly made or participated in the making or issuing of various deceptive and untrue statements of material facts. Purizer omitted to state material facts necessary in order to make the statements made, in light of the context in which they were made, not misleading to Plaintiffs.

These conclusory allegations fail to state with particularity facts giving rise to a strong inference that Purizer acted recklessly in making its representations to plaintiffs.

The court is not persuaded by plaintiffs' argument that Purizer acted recklessly in not ensuring that scientific test evidence supported its claims. The amended complaint alleges that Battelle agreed, in various contracts, to test the effectiveness of the Purizer Vapor for Purizer, and that based on Battelle's work under those agreements Battelle advised Purizer that the

Purizer Vapor was superior to competing processes. Without more, the court cannot say that Purizer's reliance on Battelle's representations constituted an extreme departure from the standards of ordinary care, supporting a finding of recklessness.

However, plaintiffs allege in the alternative that Purizer is vicariously liable for Battelle's representations, because Battelle was acting as Purizer's agent. Purizer responds that the Supreme Court's decision in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, 511 U.S. 164 (1994), forecloses plaintiffs' agency theory of liability. In Central Bank, the Supreme Court held that a private plaintiff could not maintain a claim under section 10(b) for aiding and abetting securities fraud. Central Bank, 511 U.S. at 191. In doing so, the Court stated that section 10(b) only prohibited the making of a material misstatement or omission, or the commission of a manipulative act, and declined to extend the statute's reach to encompass acts that are not themselves manipulative or deceptive. Id. at 177-78. The Court explained that imposing liability for aiding and abetting would allow plaintiffs to circumvent the statute's reliance requirement. Id. at 180.

The courts disagree as to whether an agency theory of liability under Rule 10b-5 remains viable following Central Bank. Compare Krieger v. Gast, No. 98 C 3182, 1998 WL 677161, at *9 (N.D. Ill. Sept. 22, 1998) (noting "strong reservations about the use of allegations of agency to avoid the result of Central Bank" but deciding motion to dismiss section 10(b) claim on other grounds); Warden v. Crown Am. Realty Trust, No. Civ. A. 96-25J, 1999 WL 476996, at *4 (W.D. Pa. July 6, 1999) (rejecting agency theory of liability) with Gabriel Capital, L.P. v. NatWest Fin., Inc., 122 F. Supp. 2d 407, 430-31 (S.D.N.Y. 2000) (agency theory of liability remains viable after Central Bank); In re Centennial Techs. Litig., 52 F. Supp. 2d 178, 185-86 (D. Mass. 1999) (same); Seolas v. Bilzerian, 951 F. Supp. 978, 983-84 (D. Utah 1997) (same).

This court is persuaded by the reasoning of the courts that have held that agency liability survives Central Bank. This approach does not impermissibly extend liability to acts that are not prohibited by the statute; rather, courts imposing liability under an agency theory are merely

"deciding on whose shoulders to place responsibility for conduct indisputably proscribed by the relevant statute." See Vento & Co. v. Metromedia Fiber Network, Inc., No. 97 CIV. 7751 (JGK), 1999 WL 147732, at *12 (S.D.N.Y. Mar. 18, 1999) (quoting American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1430-31 (3d Cir. 1994)). Moreover, reading Central Bank to preclude agency liability would result in an exclusion from liability of corporations under Rule 10b-5, since those entities can only act through their agents. See Vento & Co., 1999 WL 147732, at *13; In re ICN/Viratek Sec. Litig., No. 87 CIV. 4296, 1996 WL 164732, at *6 (S.D.N.Y. Apr. 9, 1996) (noting that "[i]f claims of agency such as these did not give rise to primary liability..., then a corporation, acting with scienter, could use an analyst, acting without scienter, as its agent to make false statements to the market, and neither the analyst nor the corporation would be liable under § 10(b)"). This court does not believe that the Supreme Court intended such a result. To the extent that Count II relies on an agency theory of liability, it survives Purizer's motion to dismiss.

## B. Loss Causation

Battelle also argues that Counts I and III should be dismissed because plaintiffs failed to adequately plead loss causation. Loss causation is the standard common law fraud rule, and has been borrowed by the federal courts for use in federal securities fraud cases. Bastian v. Petren Res. Corp., 892 F.2d 680, 683 (7th Cir. 1990). A plaintiff bringing a securities fraud case under Rule 10b-5 must plead loss causation by alleging that the defendant's misrepresentations caused the plaintiff's injuries.[2] Caremark, Inc., 113 F.3d at 648. That is, plaintiffs must allege that they would not have suffered a loss on their investment if the facts were as they believed them to be when they purchased the securities. In re VMS Sec. Litig., 752 F. Supp. 1373, 1399 (N.D. Ill. 1990).

---

[2] "Transaction causation," by contrast, requires an allegation that the plaintiff would not have invested but for the defendant's misrepresentations. Caremark, 113 F.3d at 648. Battelle concedes that plaintiffs have adequately pled transaction causation.

7

Here, plaintiffs have alleged that they invested funds in Purizer preferred stock, that the success or failure of their investment depended on the commercial viability of the Purizer Vapor, that Battelle falsely represented that the Purizer Vapor was more effective than competing technologies and that it therefore had considerable commercial potential, and that in actuality commercialization of the Purizer Vapor was not feasible because the process was no more effective than existing technologies. Viewing these allegations in a light most favorable to plaintiffs, it is reasonable to conclude that the true value of plaintiffs' investment is lower than the price they paid, as a result of Battelle's misrepresentations. Plaintiffs have adequately alleged loss causation.

### C. Disclaimers and Forward-Looking Statements

Battelle argues that disclaimers contained in the business plan bar plaintiffs' fraud claims based on that document. The business plan states:

> While Purizer believes the information herein to be accurate, Purizer does not make any representations or warranties with respect to its accuracy or completeness, and expressly disclaims any and all liability for any representations or warranties, express or implied, contained in or omitted from, this Business Plan or any other written or oral communication transmitted or made available.[3]

The business plan further states that it should not be relied upon for purposes of making a decision to invest in Purizer. Plaintiffs respond that Battelle cannot use general disclaimers and warnings to relieve itself of liability for specific misrepresentations.

Battelle cites Carr v. CIGNA Sec., Inc., 95 F.3d 544 (7th Cir. 1996), in support of its argument. However, that case stands for the proposition that clear written warnings control over conflicting oral statements. See Carr, 95 F.3d at 547 (where oral statement that investment is safe contradicts written disclaimer that investment is risky, written disclaimer controls). Carr is inapplicable where the alleged misrepresentations do not specifically conflict with the disclaimer.

---

[3] Battelle attaches a copy of the business plan to its motion to dismiss. Because plaintiffs refer to this document in the amended complaint and it is central to plaintiffs' claims, the court can consider it without converting the motion to dismiss to one of summary judgment. See Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993).

See Fugman v. Aprogenex, Inc., 961 F. Supp. 1190, 1197-98 (N.D. Ill. 1997) (false oral statement that flaws in diagnostic test system had been fixed and that the system was ready for market did not contradict written disclaimer that investment was risky).

Here, the business plan only generally disclaims the accuracy of the information contained in it. It does not address specific statements in the business plan, such as that "Battelle has validated the efficacy of Purizer technologies," and that Battelle "has determined that the Purizer Vapor is five times more effective than an equivalent amount of ozone." Boilerplate disclaimers such as those found in the business plan are ineffective as a shield from liability for affirmative misrepresentations. See Xerox Fin. Servs. Life Ins. Co. v. Salomon Bros., Inc., 1992 WL 151923, at *7 (N.D. Ill. June 19, 1992). In addition, the alleged misrepresentations appear in writing, in the same document that contains the disclaimer, a circumstance that does not raise the danger of imposing liability based on later-misremembered or invented oral statements that are inconsistent with written warnings. See Carr, 95 F.3d at 547; Assocs. in Adolescent Psychiatry v. Home Life Ins. Co., 941 F.2d 561, 571 (7th Cir. 1991); see also Rissman v. Rissman, 213 F.3d 381, 384 (7th Cir.), cert. dismissed, 531 U.S. 987 (2000). Accordingly, plaintiffs' allegations of fraud based on misrepresentations in the business plan survive Battelle's motion to dismiss.

Battelle also argues that its representatives' oral statements were projections, and thus are not actionable. Predictions and forecasts typically are not actionable under section 10(b). Arazie v. Mullane, 2 F.3d 1456, 1468 (7th Cir. 1993). However, the oral statements attributed to Battelle representatives were not such forward-looking statements. The slide presentations, to which Battelle is alleged to have contributed, included representations that the Purizer Vapor contains the singlet oxygen ion and hydroxyl radicals, and that it is five times more powerful than ozone. The amended complaint alleges that Battelle representatives made similar statements in speeches at investor presentations. These representations were statements of present fact.

Nor does prefacing these statements with the qualifier "where we think we are is..." transform the statements into predictions, as Battelle suggests. Although predictions may not

9

constitute fraud, "intentions and beliefs are 'facts' for this purpose when they are open to objective verification." Eckstein v. Balcor Film Investors, 8 F.3d 1121, 1132 (7th Cir. 1993). Battelle's statement to potential investors that the Purizer Vapor "[i]n air, [is] up to five times more powerful than ozone with a much higher oxidative potential, and we have demonstrated that in entrained air kills" is a statement that is open to objective verification, however the Battelle representative styled it. Battelle's alleged oral misrepresentations are actionable.[4]

### D. Federal Rule of Civil Procedure 9(b)

Battelle also contends that Count I should be dismissed for failure to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). This requirement means supplying the "who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). Essentially, a plaintiff must specify which defendant "said what to whom and when." Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 471 (7th Cir. 1999).

Plaintiffs' amended complaint fails to meet Rule 9(b)'s requirements. The amended complaint alleges that misrepresentations or omissions were made in Purizer's business plan, which was distributed to prospective investors, and in six investor presentations. It alleges that the presentations were made to potential investors on six different dates in April and May 2000, at four different locations, and involving different presenters and thus varying content. The amended complaint also alleges that the April 21, 2000 presentation was videotaped, and that the videotape was subsequently shown to potential investors. The amended complaint fails to specify, however, which of the 51 plaintiffs received the business plan (and when), which of the plaintiffs attended investor presentations (and if they attended, which plaintiffs attended which presentation), and which plaintiffs viewed the videotape of the April 21, 2000 presentation.

---

[4] Given that the court has found that a number of alleged misrepresentations in the business plan and oral presentations survive the motion to dismiss, the court need not address the operation of warnings and disclaimers in the information statement.

10

Indeed, the complaint suggests that at least some of the plaintiffs may have received the alleged misrepresentations from none of these sources, but rather "relied on statements of other Plaintiffs who attended the investor presentations."

Given the number of plaintiffs in this case, it may be a burdensome task to comply with the requirements of Rule 9(b), but it is a necessary one. See Ackerman, 172 F.3d at 470. Count I is dismissed without prejudice.[5]

### E. Economic Loss Doctrine

Finally, Battelle argues that Count IV, alleging negligent misrepresentation, should be dismissed because it seeks the recovery of economic loss, which is not recoverable under Illinois law. Plaintiffs respond that the economic loss doctrine does not apply because defendants are in the business of supplying information for the guidance of others in their business transactions.

Illinois law generally prohibits recovery in tort for purely economic loss. Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443, 448 (Ill. 1982). An exception is made, however, for negligent misrepresentations made by defendants who are in the business of supplying information for the guidance of others. Id. at 452. Where a defendant provides information that is merely ancillary to a service or the sale of a product, it is not in the business of supplying information for the guidance of others in their business dealings. Tolan and Son, Inc. v. KLLM Architects, Inc., 719 N.E.2d 288, 296 (Ill. App. Ct. 1st Dist. 1999). On the other hand, where the value of a defendant's services lies in the analytical work, that is, where the end product is the ideas themselves, it is in the business of supplying information for the guidance of others in their business dealings. Id. at 297. Where a defendant supplies both information and non-informational services or goods, "[t]he critical question...is whether the information is an important part of the product offered." Id.

In this case, the negligent misrepresentation claim characterizes Battelle's primary

---

[5] The same defect would also appear to affect Counts II and III, but the parties have not moved to dismiss those counts on that basis.

11

business as "provid[ing] scientific advice and scientific information to customers." Other portions of the amended complaint make clear that Battelle's responsibilities also included designing and building generators, and otherwise assisting Purizer in developing its technology for commercial applications. At this stage, the court cannot say that the allegations in the amended complaint clearly establish that Battelle's act of supplying information was merely incidental to its non-informational services. Accordingly, the motion to dismiss Count IV is denied.

**ORDERED:** Battelle's motion to dismiss is granted as to Count I, without prejudice, and denied as to Counts III and IV. Purizer's motion to dismiss Count II is denied. Plaintiffs are given until January 22, 2002 to file an amended complaint.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED: JAN 0 4 2001

12